UNITED STATES of America,
Plaintiff–Appellee,

v.

Hobert J. BARRETT, Jr.,
Defendant–Appellant.

No. 91–4095.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 9, 1992.

Decided Dec. 23, 1992.

Terry Lehmann, Office of the U.S. Atty., Cincinnati, OH, Joseph Douglas Wilson (argued and briefed), Dept. of Justice, Crim. Div., Appellate Section, DC, for plaintiff-appellee.

Thomas G. Eagle (argued and briefed), Landen & Eagle, Franklin, OH, for defendant-appellant.

Before: MERRITT, Chief Judge, and MARTIN and BOGGS, Circuit Judges.

MERRITT, Chief Judge.

Defendant Hobert Barrett appeals his conviction by guilty plea and sentence for kidnapping. He was sentenced to life imprisonment. Barrett argues that he should be allowed to withdraw his guilty plea because the District Court participated in plea negotiations in violation of Fed.R.Crim.P. 11(e)(1), which forbids a district court from participating in the plea bargaining process.[1] We find that the defendant should be allowed to withdraw his guilty plea because the trial judge violated this rule.

FACTS

Barrett was convicted of abducting a five-year-old girl from in front of a Travelers Motel in Chesapeake, Ohio. The presentence report indicates that Barrett took her to Scarbro, West Virginia, where he spent the night, and then to Winston-Salem, North Carolina, where he abandoned the child beneath an underpass. A medical examination of the child revealed evidence of sexual abuse. On August 1, 1990, a

---

1. (e) Plea Agreement Procedure.

    (1) In General. The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

    (A) move for dismissal of other charges; or

    (B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

    (C) agree that a specific sentence is the appropriate disposition of the case.

The court shall not participate in any such discussions.

grand jury indicted Barrett on a single count of kidnapping, and he was arrested three months later in Versailles, Indiana.

Prior to trial, the District Court judge arranged a conference call between himself, the prosecutor and the defense counsel. The purpose of the call was to facilitate a plea by helping the parties work through a dispute regarding the proper application of the sentencing guidelines. The judge began the conversation by stating that he was "not soliciting the defendant to do anything." Throughout the conversation he repeated that he was not urging the defendant to plead guilty, and would not punish him for going to trial.

Nevertheless, the purpose of the conversation was to facilitate a plea. The judge first proposed that the parties consider a plea with a right of appeal from the sentence. He then suggested that it did not much matter what guidelines interpretation the parties agreed to, because he would likely exceed the guidelines in any event. The judge solicited and received information about the range of sentences being discussed. He rejected a defense suggestion that the minimum sentence might be seven years, saying "there is no way on God's green Earth I'm going to sentence him to only seven years, and I think the likelihood is I'm going to exceed the guidelines." The prosecutor's assertion that 150 to 170 months would be more appropriate was likewise rejected: "Don't put any money on it Mr. Lehmann. Don't bet your nest egg on it."

Troublesome as these statements may have been to the defendant, more troublesome still were the court's comments on the merits of the case. "I truly don't see what defense he has. My understanding is that your investigator has found no people who he has been looking for, which doesn't surprise me one iota." Six days after this conversation, Barrett entered a plea of guilty and was sentenced to life imprisonment.

## DISCUSSION

It is apparent that the District Judge initiated the telephone conference in good faith. He tape-recorded the conversation to preserve a record and repeatedly assured defense counsel that his purpose was not to coerce her client into pleading guilty. Nevertheless, this sort of participation by a judge in the plea bargaining process presents the kind of dangers Fed.R.Crim.P. 11(e)(1) was meant to eliminate. Referring to the plea bargaining process, the rule states simply that "the court shall not participate in any such discussions."

■ The primary reason for Rule 11 is that a judge's participation in plea negotiation is inherently coercive:

"The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not."

*United States ex rel. Elkins v. Gilligan,* 256 F.Supp. 244, 254 (S.D.N.Y.1966). Of course, in this case, the District Judge insisted that he would not invoke his "awesome power" to punish the defendant if he refused to plead. By intervening to facilitate a plea, however, the judge communicated to the defendant that he desired a plea. He thereby raised the possibility, if only in the defendant's mind, that a refusal to accept the judge's preferred disposition would be punished. *See United States v. Werker,* 535 F.2d 198, 202 (2d Cir.1976), *cert. denied,* 429 U.S. 926, 97 S.Ct. 330, 50 L.Ed.2d 296 (1976); Advisory Committee Notes to Federal Rules of Criminal Procedure, 62 F.R.D. at 284.

It is not only a court's sentencing power which gives coercive potential to its participation in the plea bargaining process, but also the court's control over the conduct of a trial. "The defendant must view the judge as the individual who conducts the trial and whose rulings will affect what the jury is to consider in determining guilt or innocence. The defendant may therefore

be reluctant to reject a proposition offered by one who wields such immediate power." *Werker*, 535 F.2d at 202; *see also* Advisory Committee Notes, 62 F.R.D. at 283–84. In *Werker*, the trial judge offered to bind himself to impose the same sentence whether the defendant pleaded guilty or went to trial. The court held that even without the power to punish a refusal to plead by imposing a greater sentence, the coercive potential of judicial participation still justified adherence to Rule 11.

■ The dangers of judicial participation in plea bargaining are not limited to its coercive potential. There is also a real danger that a judge's neutrality can be compromised. The District Judge's knowledge of the status of the plea negotiations and of the progress of the defendant's pretrial investigation caused him to make statements indicating that his neutrality was compromised in this case. Judicial neutrality is as important when a defendant pleads guilty as when a case goes to trial, because participation in plea negotiations can interfere with a judge's ability to determine objectively whether a defendant's guilty plea is voluntary. Advisory Committee Notes, 62 F.R.D. at 284.

This is one of the rare cases in which a judge's predisposition to find a defendant guilty is apparent from the record. The judge's statements that in his opinion the defendant had no case, and that he was not surprised that the investigator had been unable to locate any alibi witnesses, go beyond mere predisposition. Their utterance was coercive. The defendant was faced with the choice of pleading guilty or taking his chances at trial in front of a judge who seemed already to have made up his mind about the defendant's guilt. This is the kind of choice Rule 11 was designed to eliminate.

Courts that have construed Rule 11 have uniformly held that it means what it says: the court shall not participate in any plea agreement negotiations. This court has held that "[u]nder Rule 11, the judge's role is limited to acceptance or rejection of the plea agreement after a thorough review of the relevant factors; the judge should not

participate in the plea bargaining process." *United States v. Harris*, 635 F.2d 526, 528 (6th Cir.1980), *cert. denied*, 451 U.S. 989, 101 S.Ct. 2326, 68 L.Ed.2d 847 (1981). The *Werker* court likewise interpreted the Advisory Committee Notes as leaving "no room for doubt that [Rule 11's] purpose and meaning are that the sentencing judge should take no part whatever in any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of guilty or conviction, or submission to him of a plea agreement." *Werker*, 535 F.2d at 201.

The government takes the position that the District Judge's conduct was not "participation" under Rule 11. The argument is that the conversation was merely a *Burns* warning, given early in order to allow the defendant to make an informed choice about whether or not to plead. *Burns v. United States*, —— U.S. ——, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), requires a court to give reasonable notice to a defendant if it intends to exceed the sentencing guidelines based upon grounds not identified in the presentence report or pre-hearing submission by the government. The purpose of the rule is to give defendants the opportunity to challenge an upward departure during the sentencing process. *Id.* at ——, 111 S.Ct. at 2186–87. The District Judge's comments, however, went far beyond an interpretation of the guidelines or a warning. They were a direct comment on the facts of the case during the bargaining process rather than after the parties had worked out their bargain.

The Advisory Committee Notes to Rule 11 specifically address and reject the argument that a trial judge should be allowed to help parties elicit facts in order to facilitate a plea agreement. They cite one commentator who has advocated such participation, and state that Rule 11 does not adopt this position. "The amendment makes clear that the judge should not participate in plea discussions leading to a plea agreement. It is contemplated that the judge may participate in such discussions as may occur when the plea agreement is disclosed in open

court." Advisory Committee Notes, 62 F.R.D. at 284.

The government also argues that, taken as a whole, the conversation did not prejudice the defendant, and so is harmless error under Fed.R.Crim.P. 11(h). This argument takes two forms. First, the government argues that the judge's statements that he would probably exceed the sentencing guidelines could as likely encourage the defendant to take his chances at trial as to plead guilty. Second, the government argues that the numerous statements by the judge that he was not urging the defendant to plead guilty mitigate the coercive effect of his other statements. These arguments miss the point. This court's role is not to weigh the judge's statements to determine whether they were so oppressive as to abrogate the voluntariness of the plea. "Rule 11 is obviously intended *totally* to eliminate pressures emanating from judicial involvement in the plea bargaining process...." *Werker*, 535 F.2d at 203 (emphasis added). By trying to facilitate a plea bargain, the judge indicated that he desired an agreement; this is pressure enough. Barrett must be allowed to withdraw his guilty plea.

■ The only remaining question is whether to remand this case to the original District Judge or to another judge. If the only purpose of Rule 11 were to avoid compromising a judge's neutrality, the decision might be left to the District Court's discretion. Rule 11 is concerned, however, not only to protect judicial neutrality, but also to eliminate the coercive effect of judicial participation on plea bargaining. "Regardless of the judge's objectivity, it is the defendant's perception of the judge that will determine whether the defendant will feel coerced to enter a plea." *Werker*, 535 F.2d at 202. Even if the District Judge can put aside knowledge about the defendant and provide a fair hearing, the judge cannot remove the doubt from the defendant's mind caused by his statements in this case. To cure this improper judicial participation in the plea bargaining process, then, the case must be assigned to another judge.

The conviction and judgment is therefore vacated and set aside and the case is remanded to the District Court with instructions that the defendant be allowed to withdraw his guilty plea, and that the case be assigned to a new judge.